In the Matter of the Application of SAMUEL A. LEWIN and SOLOMON M. SCHENBAUM, on Behalf of Themselves and All Others Similarly Situated, Petitioners, for an Order against FIORELLO H. LAGUARDIA and Others, Respondents.

Supreme Court, Special Term, New York County, July 2, 1940.

*Herman E. Cooper,* for the petitioners.

*William C. Chanler, Corporation Counsel [Robert H. Schaffer* of counsel], for the respondents.

VALENTE, J. This is a proceeding instituted by the petitioners pursuant to article 78 of the Civil Practice Act, wherein petitioners ask for an order directing the respondents as the board of estimate to repeal and annul the provisions of the expense budget adopted on April 26, 1940, creating " per session " positions as medical inspectors, physicians and dentists in the department of health of the city of New York, and directing the respondents to restore

to the expense budget appropriate provision for those positions on the per annum basis.

The gist of the petitioners' complaint is that the action of the board of estimate in the adoption of the 1940–1941 budget illegally changes the status of the physicians and dentists from "per annum" employees to temporary "per session" employees. The determination of the board is challenged with the assertion that this was an administrative act performed in bad faith and constitutes an improper abolition of civil service positions and an evasion of a mandatory provision of the Administrative Code of the City of New York (§ B40–6.0) by administrative rather than legislative action. Petitioners insist that it is a stratagem on the part of the mayor to overcome the force of certain decisions (*Lewin* v. *City of New York*, 256 App. Div. 1063; *Schenbaum* v. *City of New York*, Id.) which hold that petitioners and all those similarly situated were entitled to annual salary increments. It is pointed out that the respondents in order to circumvent this section of the Administrative Code, have resorted to a manipulation of the budget, thus depriving the petitioners of the benefit of the provision. The method employed consisted of the preparation and adoption of a 1940–1941 budget "dropping" or "eliminating" the petitioners' positions on a per annum basis and substituting therefor similar positions on a per diem or per session basis.

Admittedly, employees who render services on a per diem basis are not as fortunately situated as those working for a stipulated annual salary. Temporary per session employees are not entitled to salary increments, full pay while on sick leave, or to vacations with pay. The petitioners claim that this action by the board of estimate is practically an arbitrary ouster of experienced employees by abolition of their positions, without regard to sections 22 and 31 of the Civil Service Law, and constitutes an attempt to replace them with young men who would utilize the facilities of the health department as a training ground. The city, however, emphatically urges that the action was not capricious or in bad faith, that the board was motivated only by good intentions and that the positions were not in fact abolished. Furthermore, the city declares that petitioners have not suffered a loss of their positions but only a change in the mode of payment of salary, and this to provide greater flexibility in the health service and a more economical administration. The board avers that for some years it has been the policy to make appointments to the medical staff on a per session basis and that by the change in budgetary arrangements it is not contemplated to displace the present incumbents, since the same number of positions were provided for in the new budget.

The question presented then is whether the board of estimate has power to fix the salaries on a per session basis. Section 67 of the New York City Charter provides: "The power is vested in, and it shall be the duty of the board of estimate, except as otherwise provided in this charter or by statute, to fix the salary of every officer or person whose compensation is paid from the city treasury, other than day laborers." The court has been unable to find any other enactments that would limit or circumscribe this power. *Matter of Wingate* v. *McGoldrick* (279 N. Y. 246); *Matter of Hetherington* v. *McGoldrick* (Id. 687); *Matter of Rosenthal* v. *McGoldrick* (Id. 688) are authority for the proposition that where the Legislature has conferred plenary independent power on an officer or board to fix compensation of employees, the court may not substitute its discretion for the discretion vested by law in such officer. In the *Wingate* case the Court of Appeals said: "Complaint that a statute is unwise or that, in practice, it works detriment to the public interest, may, always, be addressed to the Legislature. A court may not give ear to such complaint." These cases relate to the power to fix pay conferred on judicial officers by statute, but as was pointed out in *Matter of McCarthy* v. *LaGuardia* (172 Misc. 260; affd., 259 App. Div. 710) "they are logically applicable to similar power conferred on the board of estimate and to the exercise by it of such power to reduce compensation."

It does not appear that the opinion in *Matter of Rushford* v. *LaGuardia* (280 N. Y. 217) conflicts or is contradictory. The holding there is to the effect that action under section 68 of the Charter, which permits the board of estimate to create, abolish or modify positions subject to the provisions of the Charter and Civil Service Law, should be undertaken when it adopts the budget. In the *McCarthy* case (*supra*) the charge was made that the fixation by the board of estimate of the salaries of clerks to justices of the Municipal Court at $1,200 annually was made in bad faith and virtually amounted to the abolition of the position. The court, however, held that the board had power to fix compensation either upwards or downwards, except where the plenary power is vested elsewhere by statute. (See, also, *Matter of Conroy* v. *LaGuardia*, 258 App. Div. 222.)

*Matter of Danker* v. *Board of Health* (266 N. Y. 365), one of the cases relied upon by the petitioners, is not expressive of an opposite view. The principle of that decision is: "The saving of money to the city of New York is no justification for the *fictitious* abolition of a position as unnecessary." It is true that the petitioners here

charge that the effect of the action of the board is tantamount to an abolition of their position, and is an attempt to accomplish by indirection that which is specifically prohibited by direction. While the petitioners contend that the contemplated change in the mode of payment amounts in reality to an abolition of the position, in contravention of sections 22 and 31 of the Civil Service Law, I am unable to acquiesce in that view, for the positions have not as a matter of fact been abolished, although the incidental remuneration for the service to be rendered has undergone a change.

The petitioners rely on section 68 of the Charter, viz., " The board of estimate may at any time, *subject to the provisions of this Charter and the Civil Service Law* and except as otherwise provided by statute, create, abolish or modify positions and grades of persons paid from the city treasury." Unquestionably this provision imposes a definite limitation on the power to abolish positions and dictates the necessity of acting in good faith. (*Matter of Friedman* v. *Kern*, 171 Misc. 332; *Matter of Conway* v. *Carey*, 255 App. Div. 374; *Matter of Meenagh* v. *Dewey*, 170 Misc. 192.) The city insists that none of the employees in the category of petitioners are to be dismissed and that the budgetary appropriation for 1940–1941 allows for the identical number of positions as provided for in the present budget.

I am disposed to agree with the argument that the board did not abolish the positions and that consequently the petitioners' services are continued after July 1, 1940, except for the proposed modification in the method of pay. While change in the mode of payment of salary may appear to be a radical departure in policy, it is difficult to comprehend it as the equivalent of the abolition of the position. The elimination of a position would seem to contemplate something more than a change in the payment of incidental salary. My attention has not been directed to any statute which requires that an appropriation of salary must be on the per annum basis.

The court recognizes the decisions of *Lewin* v. *City of New York* (256 App. Div. 1063) and *Schenbaum* v. *City of New York* (Id.). While regular per annum employees are entitled to the mandatory salary increment (N. Y. City Administrative Code, § B40–6.0) a change to a per diem basis results in the loss of this advantage. It seems to me, however, that this aspect should not control the determination, for otherwise the city's endeavors to effect economies through salary readjustments would be seriously hampered. I am not unmindful that the claim is advanced that if the board is empowered to fix salaries under section 67 of the Charter, by modifying the basis of pay from annual to per session compensation,

that the city may decide to effect a similar change in pay for other positions in the municipal service, and that ultimately the continuance of such a policy would be destructive of the civil service. It may well be that a widespread and arbitrary program having for its object a general revision and recasting of pay schedules from a per annum basis to a per session basis, would be subject to serious criticism. I am not called upon, however, to decide a hypothesis of that character. There may always be an appeal to the Legislature when exigencies arise demanding legislative action and appropriate remedies may then be invoked. Suffice it to say that this decision rests on the factual situation that has been disclosed on the instant application. The application for an order is, therefore, denied. Settle order.