[Civ. No. 12580.   First Dist., Div. Two.   May 11, 1944.]

GUSTAV STOHL, Respondent, v. RUSSELL C. HORST-MANN, as City Auditor, etc., Appellant; CITY OF OAKLAND, Intervener.

Markell C. Baer for Appellant.

Frank W. Creely, C. Stanley Wood and R. H. C. Proffitt for Respondent.

F. Bert Fernhoff, City Attorney, and John W. Collier, Assistant City Attorney, for Intervener.

SPENCE, J.—Petitioner sought a writ of mandate to compel the respondent city auditor to draw warrants in petitioner's favor for all salary due or to become due to petitioner under Ordinance No. 1227 C.M.S. of the City of Oakland. The trial resulted in judgment in favor of petitioner and from said judgment, respondent appeals. We will refer to the parties as petitioner and respondent throughout this discussion.

The material facts are undisputed. Petitioner has held for many years and still holds the rank of patrolman in the Oakland Police Department. In 1938 he was regularly assigned to duty in charge of the city jail. On November 26, 1940, the Oakland City Council duly enacted Ordinance No. 1227 C.M.S., the validity of which has been challenged by respondent. The full text of that ordinance is as follows:

"An Ordinance fixing the salary of the member of the Police Department assigned to duty in charge of the City Jail.

"Be it Ordained by the council of the City of Oakland as follows:

"Section 1. The member of the Police Department assigned to duty in charge of the City Jail, shall receive, in addition to the salary attached to the rank held by said member of the Police Department, the sum of $25.00 per month during such time as said member shall be assigned to said duty in charge of the City Jail.

"Section 2. This Ordinance shall take effect immediately."

Since the adoption of said ordinance petitioner has continued to be the member of the police department assigned to duty in charge of the city jail and has duly performed the duties prescribed by the rules governing the police department. The city council has regularly passed and allowed claims for petitioner's salary as authorized by said ordinance but the respondent auditor has refused and still refuses to approve said claims or to draw his warrants in favor of petitioner for the additional $25 per month or for any amount greater than the amount prescribed as the salary of patrolmen generally. The trial court held that the ordinance was valid and ordered respondent to draw warrants in accordance therewith.

Respondent's brief contains several headings which are di-

rected to the contentions that the above mentioned ordinance is invalid first, because it is claimed that petitioner has been promoted to a higher rank without compliance with the civil service provisions of the charter, and second, because it is claimed that the payment of additional compensation to petitioner is violative of public policy. The consideration of these contentions requires reference to the charter provisions.

The city of Oakland is governed by a freeholders' charter, which was amended in 1931 to provide for a city manager form of government. (Stats. 1931, p. 2636). The members of the police department are under the jurisdiction of the city manager.

Section 32 of the charter provided:

"The compensation of all City officers, officials or employees not fixed in this Charter shall be fixed by the Council, . . . provided, that the compensation of all officers, officials or employees, under the jurisdiction of the City Manager, shall be fixed by the Council only with his recommendation . . . ."

Section 91 of the charter provided:

"The officers and members of the Police Department shall receive annual compensations comprising their salaries of not less than the amounts hereinafter set forth, to wit:

| | |
|---|---|
| Chief of Police | $5400.00 |
| Captain of Inspectors | 4200.00 |
| Captains of Police, each | 3600.00 |
| Lieutenants, each | 3000.00 |
| Inspectors, each | 2760.00 |
| Assistant Inspectors, each | 2640.00 |
| Sergeants, each | 2640.00 |
| Corporals, each | 2580.00 |
| Patrolmen, first year of employment, each | 2160.00 |
| Patrolmen, second year of employment, each | 2280.00 |
| Patrolmen, third year of employment, each | 2400.00" |

It will be noted that the charter did not *fix* the salaries of the members of the police department but merely declared that such salaries should be "not less than" certain specified amounts. In other words, the charter specified the *minimum* amounts but did not specify the *maximum* amounts. A reading of the above quoted portions of said sections 32 and 91

leads to the conclusion that the council, upon recommendations of the city manager, was authorized to *fix* the salaries of the members of the police department at the amounts specified as minimum amounts in section 91 of the charter or at amounts greater than the minimum amounts so specified, unless there were other provisions of the charter limiting such authorization.

In addition to the general civil service provisions of the charter which were made applicable to the police department, it was further provided in said section 91 that "No rank or grade other than those herein specified shall be created in said department." (Stats. 1933, p. 3189). It is this last mentioned provision which is particularly stressed by respondent who argues that the ordinance above mentioned had the effect of creating another and "higher rank or grade" in the police department in violation of the charter provision. Respondent points to the increased salary, to the nature of the duties prescribed by the rules and to the title of "Chief Jailer" which is found in the rules. Respondent therefore argues that the facts show that petitioner, a patrolman, has been promoted to a higher rank or grade without compliance with the general civil service provisions of the charter. A degree of plausibility is found in respondent's arguments but the authorities hereinafter cited do not sustain said arguments but, on the contrary, support the judgment entered by the trial court. Before considering said authorities, it is appropriate to refer to certain facts concerning the organization of the police department and to certain amendments to the charter which were adopted during the pendency of this proceeding.

Under the authority of the charter, rules were adopted relating to the organization and functioning of the police department. The applicable rules were published under the title "Manual, Instruction and Rule Book, Second Printing, April, 1937, Oakland Police Department." These rules provided for numerous special assignments within the ranks or grades established by the charter. Some of such assignments were as follows: "Desk Sergeant", "Traffic Patrol Sergeant", "Motorcycle Sergeant", "Patrolman-Cruiser", "Patrolman -Traffic-Post", "Patrolman-Motorcycle", "Patrol Wagon, Ambulance and Special Motor Drivers and Attendants", "Garage Superintendent", and "Property Clerk". Under the heading of "Miscellaneous Assignments" is also found the title "Chief Jailer". In all cases, the duties of those

designated for such assignments were specifically set forth. These rules were promulgated by the city manager pursuant to the authority granted by the charter and neither the city council, the civil service board nor any other body or person created or attempted to create in the police department any permanent rank or grade in the civil service other than the ranks and grades specified in section 91 of the charter.

In 1943, an amendment to section 91 of the charter was adopted. No material change was made in the provision prohibiting the creation of other ranks or grades in the department, the amended provision reading ". . . and no rank or grade other than those herein specified shall be created or exist in the said Department." A significant addition was made by the 1943 amendment to said section, however, in the following language: "Any increases in salary or compensation granted for any rank or grade shall apply to all officers or members in .such rank or grade; provided, however, that the City Council shall have power to provide compensation in addition to that hereinabove provided for, for the following members of the Police Department: Members of the Department assigned or detailed as motorcycle officers, Lieutenants of Police assigned or detailed to duty under the direction of the Captain of Inspectors, and the member of the Department assigned or detailed for duty in charge of the City Jail."

We find nothing in the charter, either before or after the 1943 amendment thereof, which prohibited the assignment of members of the police department to special duties in positions. bearing titles which were specified in the rules but were not enumerated as "ranks or grades" in section 91 of the charter. Respondent so concedes for he states in his brief "Until the adoption of Ordinance No. 1227 C. M. S., the detailing or assigning members of the police department in charge of the city jail involved merely matters of administrative practice in the police department and was proper." But respondent contends that after the adoption of said ordinance providing for additional salary, there was such combination of additional compensation together with special duties and special title as to constitute "an unlawful attempt to create a rank or grade forbidden by the charter" and an unlawful attempt to promote petitioner to that rank without examination. In our opinion, the authorities do not sustain respondent's contention under the facts presented in this case.

■ It appears settled that where a city council is empowered to fix salaries, reasonable variations in the salaries fixed for persons holding the same rank will be upheld. (*Banks* v. *Civil Service Commission,* 10 Cal.2d 435 [74 P.2d 741].) ■ It has also been clearly indicated that a mere revocable assignment to special duties in a position designated by a special title and carrying added compensation does not necessarily constitute a promotion to another rank or grade. (*Monahan* v. *Dept. of Water & Power,* 48 Cal.App.2d 746 [120 P.2d 730]; *State* v. *Civil Service Com.,* 8 Wn.2d 498 [112 P.2d 987, 134 A.L.R. 1100]; *People* v. *Girvin,* 227 N.Y. 392 [125 N.E. 587]). In *Monahan* v. *Dept. of Water & Power, supra,* some of those holding the rank or grade of ''journeymen linemen'' had been assigned as ''troublemen'' at increased salaries. In *State* v. *Civil Service Com., supra,* some of those holding the rank or grade of ''patrolmen'' had been assigned as ''plain-clothes men'' or ''detectives'' at increased salaries. In *People* v. *Girvin, supra,* some of those holding the rank or grade of ''patrolmen'' had been assigned as ''detective sergeants'' at increased salaries. In none of said cases was it held that such revocable assignments to special duties at increased salaries constituted promotions to another rank or grade. As was said by the court in the Girvin case at page 588, ''The distinction is still one between permanent positions and temporary assignments. . . . They were patrolmen detailed to duty as detectives. They were confirmed in the rights which were already theirs, and in no others.'' And in *Monahan* v. *Dept. of Water & Power, supra,* the court cited *People* v. *Girvin, supra,* and said at page 753, ''They are confirmed by civil service rules in their classification as linemen, and in no others.''

The foregoing authorities may be contrasted with *Schieffelin* v. *O'Brien,* 243 N.Y. 151 [153 N.E. 31], in which there was ''created'' a new office in the police department to be filled by an ''officer to be known as superintendent of buildings, to be selected from among the members of the uniformed force by the police commissioner, who . . . shall not be removed or dismissed except in the manner prescribed for other members of the force . . . .'' A police lieutenant, receiving an annual salary of $3,300 per annum, was thereafter selected by the police commissioner as superintendent of buildings with an annual salary of $5,000 without civil service examination. The appointment was held invalid in an opinion written by

Mr. Justice Cardozo, who had also been the author of the opinion in *People* v. *Girvin, supra*. The Girvin case was held distinguishable, the court saying at page 32 with reference to the facts before it, "The office being thus created, the incumbent is protected in his enjoyment of it by the provision that he shall not be removed or dismissed, except in the same manner as other members of the force. We cannot reconcile a tenure thus secured with the tenure of one who holds by virtue of a revocable assignment."

In the light of the above mentioned authorities and others, respondent concedes that "Salary, duties, title and such elements, taken alone, do not constitute the test of the status of a position or its relation to other positions." But respondent argues, "It is the grouping or combination of such factors which must be considered. And in the petitioner's case, we have all the necessary factors present in a remarkable array establishing that a promotion has been effected in every sense of the word." In other words, respondent contends that the facts before us necessarily show that a new rank or grade has been created and that petitioner has been promoted thereto. We do not believe that this contention may be sustained.

We do not wish to be understood as holding that the city council has or had unlimited power to provide for additional compensation for those assigned to special duties in the police department or any other department of the city of Oakland. It is not difficult to conceive of situations in which the nature of the special duties and the amount provided by way of increased compensation would be such as to compel the conclusion that a new rank or grade had been created and that the fundamental principles of civil service had been violated by assignments of persons to such special duties at increased salaries without complying with the civil service provisions of the charter relating to promotions. ■ But while a certain degree of inflexibility is necessary in all civil service laws, it is not the function of the courts to construe uncertainties in such laws so as to prevent any degree of flexibility and thereby "to put governmental executives in a straitjacket." (*Monahan* v. *Dept. of Water and Power*, 48 Cal.App.2d 746, 753 [120 P.2d 730].) Reasonable latitude consistent with the letter and spirit of the civil service provisions should be allowed to those charged with the duty of promoting efficiency in the various departments of government.

Several authorities arising under the civil service laws of New York are cited by the parties. Those cases however were apparently governed by the provision of the New York civil service law, quoted in *People* v. *Tully*, 47 Misc. 275 [95 N.Y.S. 916], which required that promotions should be based on merit and competition and that "an increase in the salary or other compensation of any person holding an office or position . . . beyond the limit fixed for the grade in which such office or position is classified shall be deemed a promotion." As was said in the case last cited, "A mere increase in salary does not, ipso facto, constitute a promotion; it must be beyond the limit fixed for the grade." (See, also, *Murray* v. *Water Board*, 88 Misc. 625 [151 N.Y.S. 419].) This distinction is recognized in *Friedman* v. *Kern*, 171 Misc. 332 [13 N.Y.S.2d 163], a case cited by respondent, where the court said at page 165 [13 N.Y.S.2d], "An increase in salary *beyond the maximum of the grade* is a promotion for which an appropriate competitive examination is required wherever practicable." (Italics ours.)

As above indicated, there was no maximum salary fixed for any grade in the police department, the charter merely specifying the minimum for each grade and vesting the power in the city council to fix all salaries. Ordinance No. 1227 C. M. S., increasing petitioner's salary by $25 per month while he was assigned to duty in charge of the city jail, could not be declared invalid under the rule of the New York cases, assuming such rule to be applicable in this jurisdiction, as said ordinance did not provide for an increase of petitioner's salary beyond any limit fixed for the grade of patrolman. But respondent argues that the minimum for the next higher grade must be deemed to be the maximum for the lower grade and that there was therefore an increase of petitioner's salary beyond the limit fixed for the grade of patrolmen. No authority is cited for this proposition and we know of none. In the absence of any express provision fixing a maximum for any grade, we do not believe the power of the city council to increase salaries within any rank or grade was limited by any rule other than the rule of reasonableness. It has not been suggested that the increase of $25 per month in petitioner's salary was an unreasonable increase but, on the contrary, respondent's statement of the duties imposed upon the person assigned to duty in charge of the

city jail leads to the conclusion that the increase was entirely reasonable.

■ The parties further argue at some length concerning the proper implications to be drawn from the adoption of the above quoted 1943 amendment to section 91 of the charter. Said amendment provided that any salary increase granted for any rank or grade, with certain exceptions, should apply to all members in such rank or grade. Respondent treats said amendment as a grant of power to the city council with respect to the fixing of salaries while petitioner treats said amendment as a limitation on such power. In our opinion, petitioner's construction of said amendment is clearly correct. We have heretofore expressed the view that prior to the adoption of said amendment, the city council had the power, limited however by the rule of reasonableness, to make salary increases within any rank or grade without making such increases applicable to all members of such rank or grade. That power, with certain exceptions, was denied to the council by the 1943 amendment. But we believe that the most significant feature of said amendment is that it impliedly gave recognition to the fact that both before and after the adoption thereof the mere revocable assignment, at some increase in salary, of a member of the police department to duty in charge of the city jail did not *ipso facto* constitute a promotion to a higher rank or grade.

■ Respondent's further contention that without regard to the civil service provisions of the charter, the payment of additional compensation under the ordinance would be "violative of public policy and the law" appears to be likewise without merit. The ordinance was prospective in its operation and did not purport to provide for additional compensation for past services or to provide for a prohibited increase in compensation during a term of office as was the case in many of the authorities cited by respondent. The cases hereinabove cited are ample authority for sustaining the legality of the ordinance even when considered in connection with the civil service provisions of the charter.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing was denied June 10, 1944, and appellant's petition for a hearing by the Supreme Court was denied July 6, 1944.